IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAWONA LYNN FARNAM                                    PLAINTIFF

VS.            Civil No. 2:18-cv-02173-PKH-MEF

ANDREW M. SAUL, Commissioner,
Social Security Administration                             DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Dawona Lynn Farnham, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed her applications for DIB and SSI on December 19, 2016, due to arthritis, neuropathy, prediabetes, back pain, neck pain, arm pain, leg pain, high blood pressure, and obesity. (ECF No. 11, pp. 66, 325). Plaintiff alleged an onset date of September 9, 2016. (*Id*.). Her claim was denied initially on May 19, 2017, and upon reconsideration on June 14, 2017. (*Id*., pp. 66, 208-14, 216-22). An administrative hearing was held on April 17, 2018, in Fort Smith, Arkansas, before the Hon. Clifford Shilling, Administrative Law Judge ("ALJ"). (*Id*., pp. 127-58). Plaintiff was present and represented by counsel, Michael Hamby, at the hearing. (*Id.*). Marvin Lumpkin, a vocational expert ("VE"), also testified at the hearing. (*Id*.).

By written decision dated May 9, 2018, the ALJ found Plaintiff's degenerative disc disease and obesity to be severe, but that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (*Id*., p. 69). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id*., p. 69-72).

The ALJ found Plaintiff would be unable to perform her past relevant work as actually or as generally performed. (*Id.*, pp. 72-73). The ALJ then applied the Medical-Vocational Guidelines and found that, based upon an RFC for the full range of light work and considering Plaintiff's age, education, and work experience a finding of not disabled was directed by Medical-Vocational Rule 202.14. (*Id*., p. 73).

On September 28, 2018, the Appeals Council denied Plaintiff's request for review. (*Id*., pp. 5-8). Plaintiff then filed this action on October 15, 2018. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs. (ECF Nos. 14, 15). The case is ready for decision.

## II.     Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. The complete sets of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

At the administrative hearing held on April 17, 2018, Plaintiff testified that she made it to the 12th grade in school. (ECF No. 11, p. 133). Plaintiff testified that since the alleged onset date she had attempted to work at a restaurant, but that it was only for a short time due to pain. (*Id.,* p. 134).

Plaintiff testified that her average daily level of pain was a five on a 10-point scale, but if

2

she attempted to do something that required standing or lifting anything more than 10 pounds her pain would be at a 10 on a 10-point scale. (*Id*, p. 133-34). She experienced daily pain in her back, and pain in her neck about three times a week. (*Id*.). Her pain disturbed her sleep, and she used a heating pad on her back, muscle relaxers, and pain medication every night. (*Id*., pp. 132). She took Tramadol for pain every eight hours, and the muscle relaxer cyclobenzaprine three times a day. (*Id*.).

She did not drive due to side effects from her medications, and in order to be able to drive to the hearing she had not taken her medications that day. (*Id*., p. 143). She used a cane daily for both balance and walking; and, she had been told to get a cane by her primary care provider, April Revis, APRN. (*Id*., pp. 139). She had neuropathy in her hands and feet and experienced burning and numbness which required her to change positions every half hour. (*Id*., p. 144). She had swelling in her hands, feet, and legs. (*Id*., p. 145). She had difficulty holding things, using her hands, and she frequently dropped things. (*Id*.). She could no longer work in her flowerbeds because it hurt too much to bend or stoop. (*Id.*, p. 138). She could no longer sweep, vacuum, or mop, and her husband and daughter helped her with all household chores. (*Id*.).

The medical evidence of record shows:

On May 10, 2016, Plaintiff established care at River Valley Primary Care Services with April Revis, APRN, to be evaluated for lower back pain with radiculopathy, muscle spasms, an itchy and scratchy throat, and elevated blood pressure. (*Id*., p. 395). Plaintiff reported that her back pain and muscle spasms were aggravated by standing on concrete floors at her job, and her symptoms were helped by using a heating pad. (*Id*.). APRN Revis advised Plaintiff to continue using the heating pad and to avoid lifting, pulling, tugging, and pushing for the time being in order to rest her back. (*Id*., p. 397).

3

On May 31, 2016, Plaintiff saw APRN Revis for uncontrolled hypertension, low back pain with radiculopathy, and muscle spasms. (*Id*., pp. 394-95). Plaintiff reported that the back pain and muscle spasms seemed to be stable with her current regimen, and that she could tell when she had overdone it. (*Id*.). APRN Revis prescribed Plaintiff additional blood pressure medication, and she advised Plaintiff to continue working on a heart healthy diet and exercise. (*Id*.). APRN Revis made no changes to the medication prescribed for Plaintiff's back pain based upon her reports that it was working well, and Plaintiff was advised to continue getting as much rest as she could and to continue using the heating pad. (*Id*.).

Plaintiff was seen again by APRN Revis on June 27, 2016 for management of her high blood pressure and to follow up on her back problems. Plaintiff reported her back pain was worse and she felt an x-ray was needed. (*Id*., p. 393). She had been using a heating pad daily, taking Ultram and Zanaflex, and this was helping. (*Id*.). An x-ray of Plaintiff's lumbar spine showed normal alignment with mild spondylitic ridging and likely at least mild hypertrophic degenerative changes of facets. (*Id*., p. 385). The diagnostic impression was mild degenerative changes. (*Id*.).

In a March 29, 2017 visit with APRN Revis, Plaintiff sought referral to specialists for her back pain and for weight loss to help with her blood pressure and other issues secondary to obesity. (*Id*., p. 448). Plaintiff was referred to Dr. Moore for her back and to Roller weight loss for obesity. (*Id*., p. 449). Plaintiff was advised to continue monitoring her blood pressure at home, practice a heart healthy diet including avoiding salt and caffeine, and exercise. (*Id*.).

APRN Revis saw Plaintiff on April 25, 2017 for blood pressure, ankle swelling, and back pain. (*Id*., pp. 446). Plaintiff had stopped taking lisinopril which had resolved her cough, and her blood pressure reading was good. (*Id*.). Her ankle swelling was reduced with elevation and

4

was reduced in the mornings.  (*Id*).  Plaintiff asked about physical therapy (which she needed in order to get approved for an MRI), and APRN Revis noted plans to help her get started.  (*Id*., p. 447).  APRN Revis increased Plaintiff's dose of hydrochlorothiazide and advised her to continue home monitoring, a heart healthy diet, and exercise.  (*Id*.).

On May 18, 2017, Plaintiff saw Michael Westbrook, M.D., for a consultative physical examination.  (*Id*., pp. 403-07).  Plaintiff reported: arthritis in her lower back, with an onset of seven months prior; neuropathy characterized by numbness in her hands and legs, with an onset of 15 years prior; prediabetes, with an onset of 30 years prior; and, back, neck, and bilateral arm and leg pain, with an onset of 15 years prior.  (*Id*., p. 403).  Dr. Westbrook found no abnormalities in Plaintiff's range of motion, reflexes, gait, or muscle strength.  (*Id*., pp. 405-06).  He noted that Plaintiff was able to stand/walk without an assistive device, walk on both heels and toes, but she could not squat/arise from a squatting position due to low back pain.  (*Id*., p. 406).  Dr. Westbrook found Plaintiff had mild to moderate limitations, but she did not further specify the nature of Plaintiff's limitations.  (*Id*., p. 407).

Plaintiff returned to APRN Revis on July 5, 2017 for back pain, and she reported physical therapy had not helped her symptoms.  (*Id*., p. 444-45).  She still had back pain that radiated through her hips to her lower extremities, and her hands and feet still went numb.  (*Id*.).

On August 9, 2017, Plaintiff was seen by Heather N. Manchester, APRN, for a pain management consultation.  Plaintiff reported back pain she felt may have been related to a motor vehicle accident several years ago which had gradually worsened over time.  (*Id*., p. 418).  She described the pain as a constant aching in her lower back, made worse by standing and walking, and which was helped by reclining and heat.  (*Id*).  She also reported some neck pain and numbness, tingling, and weakness in her extremities.  (*Id*.).  She was taking Meloxicam,

Tramadol, and Zanaflex, but her medications were no longer helping with her pain. (*Id.*). A physical exam revealed an antalgic gait, back pain with trunk flexion and extension, negative straight leg raises, normal sensation, and grossly normal strength and tone in all extremities. (*Id.*, pp. 420-21). The pertinent findings from a 2017 lumbar MRI were noted: L3-4 mild degenerative changes; L4-5 mild degenerative facet overgrowth, posterior ligamentum flavum buckling; and, L5-S1 small central disc protrusion, degenerative facet changes. (*Id.*, p. 421). APRN Manchester provided diagnoses of lumbar radicular pain and lumbar spondylosis, and she planned to treat Plaintiff with L5 lumbar epidural spinal injections, and if they did not help, to consider facet treatment. (*Id.*, p. 421). APRN Manchester further noted, "I do not think any activity restrictions are indicated at this time." (*Id.*).

Brian Goodman, M.D., administered lumbar epidural steroid injections ("LESI's") at the L5-S1 level on August 30, October 2, and December 20, 2017. (*Id.*, pp. 422-28, 465, 471-74).

Plaintiff saw Christina M. Metcalf, APRN on October 9, 2017. (*Id.*, p. 414). It was noted that Plaintiff was seeking disability benefits and needed to have a limitations letter filled out. (*Id.*). Plaintiff reported she had been to physical therapy and was doing injections with Dr. Goodman. (*Id.*). APRN Metcalf charted that Plaintiff's July 2017 lumbar MRI showed ligamentous buckling, but Dr. Queeny, an orthopedic specialist, was consulted in August 2017 and found Plaintiff was not a candidate for surgery at that time. (*Id.*). Physical examination showed an antalgic gait, limited range of motion, bilateral tenderness in mid to lower spine, an inability to twist, and a significant decrease in range of motion of lumbar spine. (*Id.*, p. 416). Plaintiff was diagnosed with chronic midline thoracic back pain and chronic bilateral low back pain without sciatica. (*Id.*). APRN Metcalf opined that due to ligamentous buckling in Plaintiff's MRI, she could not do any physical work, and should not lift more than 10 pounds,

bend, stoop, kneel, or do any movement with her back. (*Id*., p. 417). APRN Metcalf also recommended that Plaintiff lose weight, reduce sodium intake, and increase her physical activity for blood pressure control. (*Id*.).

APRN Metcalf provided a check-box style physical medical source statement on October 9, 2017. (*Id*., pp. 412-13). She indicated Plaintiff would be limited to lifting and carrying less than 10 pounds and could sit, stand, or walk a total of 1-2 hours per day. (*Id*., p. 412). She further indicated Plaintiff could never climb, stoop, kneel, crouch, or bend and could only occasionally balance. (*Id*., p. 413). APRN Metcalf supported her limitations with notes stating Plaintiff had "buckling ligaments in her lumbar spine," that "she could be seriously injured by lifting more than 10 pounds," and APRN Metcalf referred to an "abnormal MRI of L-spine – buckling of ligaments." (*Id*.).

On October 30, 2017, Plaintiff saw APRN Manchester again for ongoing low back and right hip pain. (*Id*., p. 469). Plaintiff reported the injections and her medications were not helping. (*Id*.). She described the pain as a constant aching in the right lower back which radiates across the back and into the right buttock. (*Id*.). It was worsened by standing and walking, while recumbency and heat eased the pain. (*Id*.). Plaintiff's diagnoses were listed as lumbar radicular pain and lumbar spondylosis, and her treatment plan was to receive bilateral lumbar facet steroid injections with Dr. Goodman. (*Id*.).

On January 16, 2018, Plaintiff returned to APRN Manchester for ongoing lower back pain with bilateral hip/buttock pain. (*Id*., pp. 457-58). Plaintiff reported her last injection was helpful for about two weeks, but she had also been off work for about two weeks at that time and felt that may have helped as well. (*Id*.). APRN Manchester planned to schedule bilateral sacroiliac joint injections for Plaintiff, and she changed her medication from tizanidine to

cyclobenzaprine. (*Id*.).

Dr. Goodman administered a sacroiliac joint injection without complications on March 1, 2018 to treat Plaintiff's hip pain. (*Id*., p. 451).

### III.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must

show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### IV.   Discussion

Plaintiff raises a single issue on appeal: whether the ALJ's RFC finding is supported by substantial evidence. (ECF No. 14, p. 2). Specifically, Plaintiff argues the ALJ's decision to give APRN Metcalf's opinion no weight, and to give great weight to Dr. Westbrook's findings, was error. (*Id.*, p. 3). Plaintiff also argues the ALJ erred in failing to consider Plaintiff's use of a cane for ambulation and balance. (*Id.*, p. 4).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c); Social Security Ruling (SSR) 96-8p. It is assessed

using all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d at 704); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012); 20 C.F.R. §§ 404.1546(c), 416.946(c).

Plaintiff refers to Christina Metcalf, APRN as her treating medical provider and argues the ALJ erred in giving little weight to the limitations opined by APRN Metcalf. (ECF No. 14, p. 3). Plaintiff contends the ALJ's assignment of little weight to APRN Metcalf's opinion was erroneous as it was based upon her seeing Plaintiff only once, but the ALJ gave great weight to the opinion of Dr. Michael Westbrook who also saw Plaintiff only once. (*Id*.). This ignores, however, that the ALJ did not assign little weight to APRN Metcalf's opinion solely on that

basis. (ECF No. 11., p. 71). The ALJ also considered the ways in which APRN Metcalf's opinion was inconsistent with the treatment notes of APRN Manchester, the Plaintiff's regular medical provider at Mercy Clinic, who reviewed the July 2017 MRI and examined the Plaintiff on August 9, 2017, and who did not think any activity restrictions were indicated. (*Id.*). The ALJ further considered the lack of any limitations indicated by Dr. Goodman, who administered one of the series of steroid injections on October 2, 2017. (*Id.*). Thus, the ALJ gave little weight to APRN Metcalf's opinion because there was little support in the record for the limitations she indicated. (*Id*). The undersigned finds no error in the ALJ's decision to give little weight to the opinions of APRN Metcalf.

Plaintiff next argues the ALJ erred by failing to discuss her use of a cane, which she contends had been prescribed by a physician and which she uses daily for both ambulation and balance. (ECF No. 14, p. 4). In his decision, the ALJ stated that he "considered all evidence of record." (ECF No. 11, p. 70). This statement is enough to warrant a presumption that the ALJ discharged his duties as stated. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (administrative law judge is not required to discuss all evidence, and failure to cite specific evidence does not mean it was not considered). Further, the ALJ considered clinicians' observations that Plaintiff ambulated quite well without the use of an assistive device and retained functional range of motion. (ECF No. 11, p. 72, 394, 421-22). While Plaintiff submitted medical records to the Appeals Council which showed she was prescribed a walker, those records were properly not exhibited as they are from after the relevant time period and do not show she had previously been prescribed a cane. (*Id.*, pp. 23-29, 32-33).

Opinion evidence did not provide any more support for the use or necessity of a cane. APRN Metcalf did not note that Plaintiff used or needed a cane in either her treatment notes or

the medical source statement she provided. (*Id*., p. 412-17). Dr. Michael Westbrook conducted a consultative physical examination on May 18, 2017, and he noted that Plaintiff did not use an assistive device to stand/walk. (*Id*., p. 406). Non-examining medical experts noted Plaintiff was able to walk one-third of a mile and had a prescription cane. (*Id*., pp. 170, 200). The medical evidence of record does not show when Plaintiff was prescribed a cane, and Plaintiff provides no citation in her brief as to when a cane was prescribed. Further, the existence of a prescription would not automatically demonstrate Plaintiff needs to use a cane frequently or even occasionally. Thus, the undersigned finds no basis for reversal on this issue.

As discussed above, the ALJ considered each of Plaintiff's impairments and examined the medical records thoroughly. (ECF No. 11, pp. 21-23). In making his RFC determination, the ALJ considered Plaintiff's testimony and other reports of her symptoms, the treatment records and medical opinions of treating healthcare providers, the opinions of non-examining medical consultants, and the findings and opinions of a consultative examiner. (*Id*.).

An ALJ may decide within a "zone of choice," and reversal is unwarranted simply because some evidence might support a different conclusion. *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). Here, the ALJ's RFC determination falls within the zone of choice and is supported by the medical and other evidence of record.

### V. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed and the Plaintiff's Complaint (ECF No. 1) be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).**

**The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of October 2019.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE